■ Joseph M. Cotazino, Jr., et al., Respondents, v Basil Development Corporation et al., Appellants.—Yesawich, Jr., J. Appeal from a judgment of the Supreme Court (Prior, Jr., J.), entered July 14, 1989 in Albany County, upon a verdict rendered in favor of plaintiffs.

On April 13, 1986, plaintiffs and defendant Basil Development Corporation (hereinafter Basil) executed a contract for the sale of real property and the construction of a residence thereon. The home, to cost $107,695, was warranted against

defective material and workmanship for a period of one year from the issuance of a certificate of occupancy, which was granted on September 8, 1986.

During an inspection the day before the closing, plaintiffs offered defendant Peter Baltis, vice-president and one-third shareholder of Basil, an extensive punchlist of items that needed to be repaired, replaced or finished. After the closing, plaintiffs sent an updated punchlist via certified mail to defendants' attorney. Thereafter, serious water leaks plagued plaintiffs' home. Defendants' attempts to repair the leaks were only partly successful, and in fact the repair efforts caused additional damage to plaintiffs' carpets and front lawn. In December of that same year, plaintiffs discovered that their chimney was subject to downdrafts when a fire in the fireplace suddenly ignited the Christmas cards displayed on the mantle. The record is replete with additional examples of poor workmanship and defective materials, which need not be exhaustively described for the purposes of this appeal.

On August 31, 1987, plaintiffs commenced this action seeking damages for breach of contract and/or warranty and negligence. Defendants asserted a counterclaim for items allegedly furnished, for which plaintiffs never paid. After a trial, the jury, in response to written questions put to it, returned a verdict awarding plaintiffs $20,000 on their cause of action based on breach of contract and/or warranty and $17,000 on the negligence cause of action. Additionally, the jury found no cause of action on defendants' counterclaim. Thereafter, plaintiffs submitted a judgment in which interest was calculated from September 10, 1986, the date of the closing. This appeal ensued.

Defendants' primary argument on appeal is that plaintiffs' proof insofar as the contract and warranty claim is concerned was insufficient to support the damages awarded. Plaintiffs had the burden of demonstrating the extent of the damages incurred (see, Berley Indus. v City of New York, 45 NY2d 683, 686), based upon the reasonable cost of replacing or completing the defective work (see, City School Dist. v McLane Constr. Co., 85 AD2d 749, 750, lv denied 56 NY2d 504). After reviewing the record, we are of the view that there is ample evidence to support the jury's $20,000 verdict for breach of contract and/or warranty. At trial, plaintiffs' expert testified regarding the cost to replace or repair individually each item identified as defective. Aggregating these individual figures produces a total figure of $24,435, exclusive of the $6,050 cost of replacing

the fiberglass tub and shower stall which plaintiffs refused to allow the manufacturer or defendants to repair.

The record does not, however, support a $17,000 negligence verdict. The only damages fairly ascribable to defendants' negligence, in contrast to defective workmanship and materials embraced within the contract and warranty claims, are those incurred as follows: repairing lawn damage occasioned when repair work debris was loaded onto the drywall subcontractor's trucks ($296.00) and replacing the accompanying topsoil ($654.10); repairing the septic system, a portion of which was cracked when heavy equipment passed over it while the ground was soft ($349.86); and replacing carpeting ($883.00) damaged by workers while they repaired the kitchen and dining rooms. Although plaintiffs maintain they suffered other damages as a result of defendants' negligence—such as the cost of their labor to spread the soil and to seed the lawn, and the musty smell in the basement resulting from the septic system problem—they did not offer any evidence or even an approximation of the value of these claimed damages. Further, as there is no evidence in the record which would justify a finding that the fiberglass tub and shower stall were damaged due to any asserted negligence on defendants' part, plaintiffs may not recover in negligence for these damaged items. Accordingly, the negligence verdict should be reduced to $2,182.96.

After the close of defendants' proof, Supreme Court granted plaintiffs' motion to amend the pleadings to assert that Baltis and Basil acted as one entity throughout the course of conduct leading to this lawsuit. The amendment was properly allowed. Permission to conform pleadings to the evidence may be given freely before or after judgment (CPLR 3025 [c]), absent prejudice or surprise from the delay to the nonmoving party (*O'Sullivan v O'Sullivan*, 126 AD2d 784, 785-786, *lv dismissed* 69 NY2d 984). Here, the original and amended complaints name Baltis, individually, as a defendant (*cf., Bonanni v Straight Arrow Publishers*, 133 AD2d 585, 586). And on cross-examination, defendants' attorney specifically questioned plaintiffs about Baltis' personal liability. It ill befits Baltis to now complain that he could not reasonably have expected his opponent to request the variance at the trial's conclusion (*see,* Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3025:15, at 486).

On the other hand, Supreme Court's instruction to the jury, that "as a matter of law * * * Peter Baltis * * * subjected himself to possible personal liability to the plaintiffs", was

inappropriate. Plaintiffs argue that because Basil never held corporate meetings, operated from Baltis' home, shared legal services with Baltis, failed to be identified on some of the contract documents, was managed exclusively by Baltis and was used by Baltis to avoid personal liability, Basil was merely Baltis' "alter ego". As additional support for their argument, plaintiffs note that the $15,000 they paid directly to Baltis' wife for the purchase price of the land was deposited in the couple's joint bank account. These factors, however, do not establish that Baltis used Basil to transact his personal business *(see, Rothermel v Ermiger,* 161 AD2d 1016, 1017); and organizing a corporate entity for the purpose of avoiding personal liability is a perfectly legitimate undertaking *(supra).* The evidence is simply insufficient to justify a finding that Baltis exercised "complete control of the corporation * * * to commit the wrong" which proximately caused plaintiffs' injury *(Matter of Guptill Holding Corp. v State of New York,* 33 AD2d 362, 365, *affd* 31 NY2d 897). Furthermore, there was no showing of fraud, illegality or wrongdoing sufficient to disregard the corporate entity *(see, Rothermel v Ermiger, supra).* Accordingly, personal liability should not have been imposed upon Baltis.

Defendants' remaining complaint concerns the correct date from which interest should be measured. "Interest shall be computed from the earliest ascertainable date the cause of action existed" (CPLR 5001 [b]). In this case neither the jury nor Supreme Court ascertained the date from which to compute the interest *(see,* CPLR 5001 [c]). Rather, plaintiffs apparently arbitrarily specified in the proposed judgment September 10, 1986, the date of closing, as the date from which the interest is to be calculated. As to the breach of warranty and/or contract award, this date is correct *(see, Caceci v Di Canio Constr.,* 72 NY2d 52, 56; *see also,* UCC 2-725 [2]).

As to the negligence cause of action, however, it appears that plaintiffs sustained their damages at various times in 1986 and endured the septic system problems in August 1988. As there is no easily identifiable day on which the negligence cause of action existed, the date suit was presumably commenced, August 31, 1987, represents a "single reasonable intermediate date" (CPLR 5001 [b]) from which to calculate the appropriate interest for the negligence award *(see, Della Pietra v State of New York,* 125 AD2d 936, 938, *affd* 71 NY2d 792).

Judgment modified, on the law and the facts, without costs, by reversing so much thereof as held defendant Peter Baltis

personally liable for the damage award; damages awarded on plaintiffs' negligence cause of action reduced to $2,182.96 with interest thereon from August 31, 1987; and, as so modified, affirmed. Mahoney, P. J., Kane, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.