■ MARY C. LYON et al., Respondents, v BELOSKY CONSTRUCTION, INC., et al., Appellants. [669 NYS2d 400] —Cardona, P. J. Appeal from a judgment of the Supreme Court (Ellison, J.), entered November 11, 1996 in Chemung County, upon a decision of the court in favor of plaintiffs.

In October 1993, plaintiff Mary C. Lyon and her sister, plaintiff Martha Clute, entered into a contract with defendant Belosky Construction, Inc. for the construction of a custom home in the City of Elmira, Chemung County, at a base cost of $247,000 with approximately $42,000 in additional features. Lyon, who is a resident of South Carolina, retained an architectural firm in South Carolina to prepare the design drawings. Upon Belosky's advice, plaintiffs retained defendant Kirk Vieselmeyer, a professional engineer, to, *inter alia*, prepare construction documents and conduct periodic inspections to insure that the home was constructed in conformity with the drawings.

Construction commenced in November 1993. In April 1994, plaintiffs became aware of a problem with a dormer over the main entrance of the home. The dormer was removed and rebuilt. Plaintiffs, however, found the rebuilt dormer unsatisfactory and directed Belosky to remove it. The home was subsequently completed with the exception of the interior and exterior of the main entrance. After moving into the home, plaintiffs learned that the roof had been centered over the library rather than the living room as represented in the drawings resulting in a change in the roof proportions and enlargement of the overhang over the main entrance. In addition, the entrance pillars could not be used in the manner depicted in the drawings.

Plaintiffs subsequently commenced this action against defendants for breach of contract. In their respective answers, defendants raised, *inter alia*, the affirmative defense of economic waste claiming that damages, if any, should be based upon the diminution in value of the structure rather than the value of replacement. Following a nonjury trial, Supreme Court found that defendants had breached their respective contracts and plaintiffs were entitled to damages in an amount necessary to replace the roof so as to bring it in conformity with the drawings. Supreme Court awarded plaintiffs judgment in the sum of $73,182.66, the agreed-upon cost of replacement including costs and interest. Defendants appeal.

We affirm. As a general rule, the proper measure of damages in cases involving the breach of a construction contract is "the difference between the amount due on the contract and the amount necessary to properly complete the job or to replace the defective construction, whichever is appropriate" (*Sherman v Hanu*, 195 AD2d 810; *see, Attardo v Petosa*, 240 AD2d 607, 608; *Rivers v Deane*, 209 AD2d 936). Where, however, "the contractor's breach was unintentional and constituted substantial performance in good faith" (*Roudis v Hubbard*, 176 AD2d 388, 389), and remedying the defective performance would result in unreasonable economic waste (*see, City School Dist. v McLane Constr. Co.*, 85 AD2d 749, 750, *lv denied* 56 NY2d 504), damages should be based upon "the difference between the value of the property as constructed and the value if performance had been properly completed" (*American Std. v Schectman*, 80 AD2d 318, 321, *lv denied* 54 NY2d 604; *see, Bellizzi v Huntley Estates*, 3 NY2d 112, 115).

It is undisputed that the defect in the main entrance, including the overhead dormer, was due to the misalignment of the roof which was constructed under the supervision and control of Belosky and purportedly overseen by Vieselmeyer. Belosky hired a framer to frame the roof but testified that he did not personally inspect the roof to insure that it and the dormer complied with the drawings. In fact, Belosky admitted that he had little experience reading drawings and relied upon the framer to whom he had subcontracted the work to make sure the home was constructed properly. Vieselmeyer, who was specifically hired to inspect the construction to make sure that it complied with the drawings, did not discover the problem with the roof until after he took certain field measurements at the request of plaintiffs' architect. By this time, however, the dormer had already been rebuilt and removed, and the entire roof had been shingled. Inasmuch as plaintiffs' expert testified

that the misalignment of the roof should have been discovered when problems with the dormer became apparent, the evidence supports Supreme Court's finding that defendants, at the very least, acted negligently in failing to detect the problem.

In addition, there is evidence that, under the circumstances presented here, the defect was substantial. Plaintiffs contracted to build a custom home at significant expense which, in fact, exceeded the fair market value of the home as completed per the drawings. Because they were away from the work site during most of the construction, plaintiffs retained and relied upon various professionals to assist them in successfully completing the project. It is clear from the record that the aesthetic appearance of the home, both inside and out, was of utmost importance to plaintiffs. Our review of the photographs of the home as constructed compared with the design drawings convinces us that plaintiffs did not get the benefit of their bargain and that requiring defendants to remedy the problem would not, under these particular circumstances, result in unreasonable economic waste. Accordingly, we find that Supreme Court applied the appropriate measure of damages (*see, City School Dist. v McLane Constr. Co.*, 85 AD2d 749, 750-751, *supra*; *cf., Jacob & Youngs v Kent*, 230 NY 239). Lastly, inasmuch as the evidence establishes that Vieselmeyer's breach of contract was a proximate cause of the damages sustained by plaintiffs, Supreme Court properly awarded judgment against him notwithstanding the relatively small fee he charged for services rendered to plaintiffs.

Mercure, White, Spain and Carpinello, JJ., concur. Ordered that the judgment is affirmed, with costs.