◼ JOHN HABER, Appellant, v R. WAYNE GUTMANN, Respondent. [882 NYS2d 780]—

Kane, J. Appeals (1) from a decision of the Supreme Court (Work, J.), entered July 7, 2008 in Ulster County, in favor of defendant, and (2) from the judgment entered thereon.

After plaintiff purchased property containing a custom-built, Adirondack-style house in a state of disrepair, he and defendant discussed renovations to the house. In June 1992, defendant wrote plaintiff a letter generally outlining the procedures for renovations if defendant were involved. Defendant was not eager to resume business as a contractor, so plaintiff hired another individual, John Byer, to perform the renovations. When plaintiff became dissatisfied with Byer's work, plaintiff and defendant again discussed the renovation project. In October 1993, plaintiff wrote to defendant and enclosed a check for defendant to start working on renovations to the house. Defendant cashed

the check and began working on the house in May 1994. The parties' agreement required plaintiff to prefund the project.

After a temporary work stoppage in July 1994 due mainly to defendant's concerns over plaintiff's funding, the parties clarified and revised the terms of their agreement and defendant resumed work in the fall of 1994. Defendant and his crew continued working until January 1995, when he halted work as a result of plaintiff's failure to advance funds. Although the parties corresponded and anticipated resumption of work, in April 1995 defendant removed his equipment from the property. At the time that defendant ceased working, the interior of the house was gutted and the outside shell was temporarily watertight, but lacked flashing around the chimneys and siding. At the time of trial in 2006 and 2007, no further work had been done on the house.

Plaintiff commenced this action in January 2001, alleging, among other things, that defendant breached their contract. Following a bench trial, Supreme Court issued a lengthy decision finding that the parties had entered into two contracts, the first covering work from October 1993 through July 1994 and the second encompassing work from fall 1994 through January 1995. The court found that plaintiff's cause of action was time-barred as to the first contract. As for the second contract, the court found that plaintiff failed to adequately prove damages, requiring dismissal of the breach of contract claim. In the alternative, the court found that if only one contract existed, plaintiff still failed to prove damages. Plaintiff appeals from the decision* and subsequent judgment.

When reviewing a decision following a nonjury trial, this Court independently evaluates the evidence and grants judgment as warranted by the record, giving due deference to the trial court's credibility determinations concerning witnesses (see Atkinson v State of New York, 49 AD3d 988, 989 [2008]; Poli v Lema, 24 AD3d 981, 983 [2005]; but see Thoreson v Penthouse Intl., 80 NY2d 490, 495 [1992]). The record here discloses that the parties entered into one contract for defendant to renovate plaintiff's house. The June 1992 letter did not constitute an offer, as it was only an outline, did not contain necessary terms and did not disclose an intent by defendant to be bound. Even if that letter was an offer, plaintiff rejected it by hiring Byer to perform the renovations. The October 1993 letter, referencing the parties' prior conversations, evidenced an

---

* While a decision is an unappealable paper, requiring dismissal of the first appeal, the appeal from the judgment includes review of the underlying decision (see CPLR 5512 [a]).

offer which was accepted by defendant when he cashed the enclosed check and began performing renovation work (*see Sky-Lift Corp. v Flour City Architectural Metals*, 298 AD2d 214, 215 [2002]). Defendant stopped working in July 1994 and only recommenced work after the parties discussed and refined some of the terms, including an increase in defendant's compensation. Supreme Court considered this the termination of the first contract and an agreement on a second contract. Yet the record reveals that, despite some disagreement in July 1994 concerning billing and funding, both parties envisioned a continuation of their relationship with defendant acting as plaintiff's contractor. That relationship did indeed continue. Thus, the initial contract continued, albeit with some amendments to the original terms. As only one contract existed and work under that contract terminated less than six years prior to the commencement of this action, the statute of limitations did not bar plaintiff's claim concerning any of defendant's work (*see* CPLR 213 [2]; *City School Dist. of City of Newburgh v Stubbins & Assoc.*, 85 NY2d 535, 538 [1995]).

Supreme Court correctly dismissed plaintiff's breach of contract claim. Plaintiff bore the burden of proving damages resulting from defendant's breach of contract (*see Peak v Northway Travel Trailers, Inc.*, 27 AD3d 927, 928 [2006]; *Cotazino v Basil Dev. Corp.*, 167 AD2d 632, 633 [1990]). In general, the proper measure of damages for breach of a construction contract is the cost to either repair the defective construction or complete the contemplated construction (*see Route 7 Mobil v Machnick Bldrs.*, 296 AD2d 809, 810 [2002]; *Thompson v McCarthy*, 289 AD2d 663, 664 [2001]; *Lyon v Belosky Constr.*, 247 AD2d 730, 731 [1998]). The damages must be reasonably certain, however, not based upon speculation (*see Peak v Northway Travel Trailers, Inc.*, 27 AD3d at 929).

Here, plaintiff's expert architect, who examined the house in 2003, testified regarding numerous defects in defendant's work. This expert opined that demolishing the house and rebuilding would cost less than repairing it piecemeal. Plaintiff's expert provided estimates for the overall cost of repairing versus replacing the building, but never testified as to the cost of repairing any specific defects in the house to substantiate his repair estimate (*see Feldin v Doty*, 45 AD3d 1225, 1227 [2007]; *Thompson v McCarthy*, 289 AD2d at 665; *compare Cotazino v Basil Dev. Corp.*, 167 AD2d at 633). He also stated that the precise cost of repairs must be based upon a detailed structural analysis, which was admittedly never performed. Defendant's expert architect, who also examined the house in 2003, opined that

defendant's construction work was properly done and that the house seemed sound.

Supreme Court accurately noted that the record was not entirely clear as to what work had been completed by Byer as opposed to defendant; some work deemed defective was clearly performed by Byer. Plaintiff did no further work on the house, leaving it exactly as when defendant ceased working, although defendant only left the house temporarily water-tight. Some damage occurred due to this neglect of the property for eight years prior to the experts' inspections and 12 years prior to the completion of the trial. Plaintiff's and his expert's main complaints were the alleged structural defects in the property, yet no structural analysis was completed and there was no itemized explanation as to what it would cost to make the building structurally sound. Considering the uncertain nature of the original supporting structure for the house, its soundness for decades prior to commencement of any work, the absence of a structural analysis, and the lack of any sagging, shifting or settling in the more than 10 years since defendant left the work site, the court reasonably determined that plaintiff failed to prove that he suffered damages as a result of defendant's work on his property (*see Route 7 Mobil v Machnick Bldrs.*, 296 AD2d at 810; *Thompson v McCarthy*, 289 AD2d at 665; *Sherman v Hanu*, 195 AD2d 810, 810-811 [1993]). Accordingly, the breach of contract cause of action was properly dismissed.

Cardona, P.J., Rose, McCarthy and Garry, JJ., concur. Ordered that the appeal from the decision is dismissed. Ordered that the judgment is affirmed, with costs.